UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JENNIFER CRANE, individually, and JEFFREY CRANE, individually,<br><br>           Plaintiffs,<br><br>      v.<br><br>CITY OF ROY, a Washington municipality, JON HOLDAM, in his official and individual capacity, and RICO ROWE, in his official and individual capacity,<br><br>           Defendants. | Case No. C08-05156 RJB<br><br>ORDER ON DEFENDANT ROWE'S MOTION FOR SUMMARY JUDGMENT RE: IMMUNITY AND ON DEFENDANT HOLDAM'S MOTION FOR SUMMARY JUDGMENT |

This matter comes before the Court on Defendant Rowe's Motion for Summary Judgment re: Immunity (Dkt. 34), Defendant Holdam's Motion for Summary Judgment (Dkt. 37), Defendant Holdam's Motion to Strike (Dkt. 59), and Defendant Rowe's Motion to Strike (Dkt. 58). The Court has considered the relevant documents, the remainder of the file herein, and heard oral argument on 18 September 2008.

## I.    FACTUAL AND PROCEDURAL  HISTORY

This civil rights action was filed in Pierce County Superior Court on February 6, 2008, and was removed to this Court by the Defendants on March 17, 2008. Dkt. 1. Plaintiffs allege that the Defendant City of Roy police officers, Jon Holdam and Rico Rowe, along with Plaintiff Jennifer Crane's ex-husband Terry Brown, (who is not a party), included false information in an official police report of child abuse. Dkt. 1, at 9. The information that Plaintiffs allege was falsely included in the reports was that the purported child abuse victim had obvious bruising on his neck and throat. Dkt. 1, at 9-10. Plaintiffs allege

that Terry Brown previously served as a City of Roy police officer, and that the named Defendant police officers included false information in the report in order to help Mr. Brown get custody of his children. *Id.*, at 10. Plaintiffs make the following claims pursuant to 42 U.S.C. § 1983: 1) interference with family relationship, 2) abuse of process, 3) malicious prosecution, 4) conspiracy to deprive Plaintiffs of their civil rights, 5) failure to supervise and adequately train against the City of Roy, and 6) unconstitutional policies and procedures against the City of Roy. Dkt. 1, at 11-15. Plaintiffs make claims under state law for: 1) violation of RCW 26.44.060, prohibiting false reporting, and 2) for negligence against the City of Roy *Id.* at 15-16.

## A.    RELEVANT EVENTS

Plaintiff Jennifer Crane (then Jennifer Robin) married Terry Brown in June of 1997. Dkt. 46. Mr. Brown was a police officer and volunteer firefighter for the City of Roy, Washington. *Id.*, at 2. The City of Roy, population of under 1,000, is located in Pierce County. Dkt. 50, at 31. Mr. Brown left his employment with the City of Roy in January of 2005. Dkt. 60.

Plaintiff Jennifer Crane began dating Plaintiff Jeffrey Crane in 2003. Dkt. 46, at 3. In October of 2004, Plaintiff Jennifer Crane's (then Jennifer Brown) and Terry Brown's marriage was dissolved after a lengthy and contentious separation. Dkt. 46, at 3. The couple had two children, L.B. and H.B. *Id.*, at 1.

Plaintiff Jennifer Crane states that she feared for her life due to Mr. Brown's behavior. *Id.*, at 2. She stated that she complained to the City of Roy Police Department of Mr. Brown's stalking and harassing behaviors, to no avail. *Id.* Eventually, she obtained temporary and then permanent restraining orders against Mr. Brown. *Id.*, at 3. The permanent restraining order was renewed on more than one occasion. *Id.* at 3-4. In April of 2004 Mr. Brown contested renewal of the restraining order. *Id.* In support of Mr. Brown's opposition to renewal of the restraining order, Defendant Jon Holdam, of the City of Roy Police Department, wrote a letter in which he commented positively upon Mr. Brown's character, and asserted that Brown's duties as a policeman were hindered by the restraining order. Dkt. 46, at 52. The letter was on City of Roy Police Department letterhead. *Id.* The then Chief of Police, John Hawk, wrote a similar letter. Dkt. 46, at 54. The letter acknowledges that he has "received several calls from [Plaintiff Jennifer Crane] telling [him] how dangerous [Mr. Brown] is . . . [Mr. Brown] has been investigated by Pierce County and there has never been any proof of the allegations." *Id.* The Chief of

Police's letter was also on City of Roy Police Department letterhead. *Id.* Despite Defendant Holdam and Police Chief Hawk's letters advocating on Mr. Brown's part, the protective order was renewed. Dkt. 46, at 56. On April 22, 2005, Mr. Brown pled guilty to violating the restraining order. Dkt. 46, at 12-13. He was given a two year deferred sentence and was fined. *Id.*

After Jennifer and Terry Brown's divorce was final, Jennifer and Mr. Crane moved in together. Dkt. 46, at 4. They eventually became engaged. *Id.* On June 21, 2005 to June 26, 2005, Plaintiffs took their children, including L.B., than age six, to Disneyland in Anaheim, California. *Id.* According to Plaintiffs, on June 22, 2005, L.B. was playing near a curb of the street in front of the hotel while waiting for the bus. *Id.* Plaintiffs allege that Mr. Crane noticed the bus was approaching and L.B. was about to step in front of it. *Id.* Mr. Crane grabbed L.B. "across the back of the neck and shoulders and then got down to his level and talked to him about the danger." *Id.*, at 5. Mrs. Crane states that this "scared L.B." and L.B. began to cry. *Id.* Plaintiffs allege that they went on to enjoy their trip. *Id.* Plaintiffs state that there were no physical marks on L.B. as a result of this incident. *Id.,* at 10.

Plaintiffs allege that the day after they returned from their trip, on June 27, 2005, L.B. and the other children stayed with their babysitter, Stephanie Smith. Dkt. 46, at 5. The record contains a statement from Ms. Smith. Dkt. 46, at 61. Ms. Smith states that she did not notice any "bruising of the skin on his neck or any other part of [L.B.'s] body." *Id.* Nor did she notice any "redness or irritation of the skin." *Id.* Mr. Brown picked L.B. up from Ms. Smith's house. Dkt. 46, at 5.

According to Mr. Brown, L.B. came to him that evening frightened about the incident in Disneyland. Dkt. 39, at 1. Mr. Brown states that L.B. told him that "he was grabbed from the back of his neck and that Jeff's hand circled around and hurt his neck and made it hard to breathe." *Id.*, at 2. Mr. Brown states L.B. felt that Mr. Crane was "really mad at him when he did it." *Id.*

Alarmed, Mr. Brown looked at L.B.'s neck and saw "some faint marks" and called Washington State's Child Protective Services ("CPS"). *Id.* According to Mr. Brown, CPS advised him to call the Pierce County's Sheriff. *Id.* An initial CPS referral was made. Dkt. 46, at 63.

Around 12:16 a.m. on June 28, 2005, Pierce County Deputy Sheriffs Montgomery Minion and Michael Phipps arrived at Mr. Brown's residence. Dkt. 48, at 1. Deputy Minion states that he carefully observed L.B. and saw no bruises, marks or other signs of assault. *Id.*, at 2. Deputy Minion denies that he

stated that he believed there was any evidence of abuse. *Id.* He advised Mr. Brown that they would not write a report about the incident and would take no further action. *Id.*

Mr. Brown states that he was dissatisfied with the Pierce County Deputies' investigation. Dkt. 39, at 2. He states that they glanced briefly at L.B.'s neck, but never looked closely on both sides. *Id.* Although he and Plaintiffs lived outside the Roy city limits, Mr. Brown then contacted Defendant Jon P. Holdam of the City of Roy Police Department. Dkt. 38. Defendant Holdam told Mr. Brown to bring L.B. to the police station. *Id*, at 2. Defendant Holdam acknowledges having a social as well as working relationship with Mr. Brown. *Id.* Defendant Holdam called in Defendant Rico Rowe of the City of Roy Police Department, who is trained in interviewing children. Dkt. 35, at 2. Defendant Holdam also contacted Jason Koontz, an EMT with Pierce County Fire District 17, which serves the City of Roy. Dkt. 41. The fire station is located across the street from the police station. *Id.*

Defendant Rowe states that he interviewed Mr. Brown and L.B. separately. Dkt. 35, at 2. Defendant Rowe states that he felt that L.B. knew the difference between truth and falsity. *Id.* Defendant Rowe filed a Supplemental Report to Defendant Holdam's Report of Investigation, which is discussed below. Dkt. 35, at 11. Rowe's report states that:

> I then asked [L.B.] to tell me if anything happened while they were [in Disneyland] that upset him, [L.B.] stated that the suspect choked him at the bus stop. I asked [L.B.] to tell me about it, he stated that there was a nickel on the ground by a persons [sic] foot, [L.B.] reached down to pick it up. He was looking at it and tossed it in the air and it hit the ground, the suspect got mad and reached around from behind [L.B.] and grabbed [L.B.] by the throat and choked [L.B.] Intel [sic] he could not breath [sic], [L.B.] stated that he started crying and the suspect let him go.
> I asked [L.B.] if his mother was there when the suspect choked him, [L.B.] stated yes, I asked him to tell me about it, [L.B.] stated that she just stood there, I asked if she said anything to the suspect, [L.B.] stated no.
> The victim was checked for physical marks that might show the choking had accrued [sic] and it was found that there were bruises on the victim's throat; pictures were taken of the marks, as well as of the victim.

Dkt. 35, at 11-12.

After Defendant Rowe interviewed L.B., Defendant Holdam filed a Report of Investigation. Dkt. 38, at 6. Holdam's report states that he examined L.B. and "observed a bruise on the side of his neck. The bruise appeared to be approximately 3-5 days old and had turned blue/yellow in color. The bruise was approximately 1 ½ inch long by ½ inch wide." Dkt. 38 at 6-7. Defendant Holdam said that he would forward any reports to the Anaheim California Police Department because the incident occurred there.

Dkt. 38, at 3-4. Defendant Holdam states that he took pictures of L.B.'s neck. *Id.* at 3. Defendant Holdam states that he sought to review the file later and the file folder was not in the report locker. Dkt. 38, at 4. He states that he found the empty file folder on the Chief of Police's desk. *Id.* The Chief of Police, John Hawk, is now deceased.

Jason Koontz, the EMT who came to the City of Roy police station at Defendant Holdam's request, states that he recalls "observing a red mark approximately three inches long on one side of the boy's neck. The mark was consistent with being made by another person's hand, but [he] could not tell from the physical evidence alone whether it was definitely the result of someone grabbing the child by the throat." Dkt. 41, at 2. He states that he remembers that multiple digital photographs were taken but,

> Because the mark was faint, it was difficult to obtain a photograph that showed it. I recall we took multiple photographs in different lighting in order to get the mark to be visible. I believe I even took one of the photographs myself. . . . The marks were very difficult, if not impossible, to see in the images I viewed.

*Id.*

On June 29, 2005, Mr. Brown filed an ex parte motion for an order restraining L.B.'s mother, Plaintiff Jennifer Crane, and her then boyfriend Plaintiff Jeffrey Crane from having contact with L.B. and his sibling H.B. Dkt. 36, at 19. In the motion, Mr. Brown states that, "my son was choked by Jeffery Crane. He stated that Crane squeezed his neck til [sic] it hurt really bad and he couldn't breathe." *Id.,* at 21. Mr. Brown filed a statement with the motion. Dkt. 46, at 71-72. In his statement, Mr. Brown related that L.B. told him of the choking incident. *Id.*, at 72. Mr. Brown stated that he looked at L.B.'s neck and noted some "faint red marks." *Id.* He stated that upon the advice of CPS, he called the Pierce County Sheriff. *Id.* He stated,

> Pierce County Officer Deputy Minion came out about 11:30 p.m. on June 27th and spoke to L.B. after he woke L.B. from a deep sleep and made the comment that he has no doubt that the incident had occurred as L.B. stated but he was not making a full report at that time due to CPS being involved. . . . After further research I found out Pierce County did not have jurisdiction on this situation as it happened in Orange County, California while the kids were on vacation. The City of Roy Police Department made a report that is being forwarded to the correct jurisdiction. L.B. was interviewed by a Child Abuse Investigation Interrogation Officer, Officer Rowe and the report and pictures were done by Officer Holdam, the case number is 05-179-0125. I was advised by the Roy Police Department, Pierce County Sheriffs and CPS all suggested that I get an order to protect my children.

*Id.* Mr. Brown did not provide the Pierce County Superior Court with copies of, or the contents of, the City of Roy police reports. The custody motion was granted. Dkt. 36, at 15. Although Mr. Brown was originally to have returned the children to Plaintiff Jennifer Crane at 5:30 p.m. on June 29, 2005(Dkt. 36, at 22), they remained with him that night due to the restraining order (Dkt. 46, at 7). The next day, June 30, 2005, the Pierce County Washington Superior Court modified the order to re-establish Jennifer Crane as the custodial parent of the children, but left in place the restraints on Jeffrey Crane. Dkt. 36, at 25. L.B. was returned to his mother's custody on June 30, 2005. Dkt. 46, at 7. A hearing was scheduled for July 18, 2005. Dkt. 36, at 25.

On July 18, 2005, the restraining order was vacated. Dkt. 36, at 28. According to the Plaintiffs, although Ms. Crane was able to gain custody of her children again after one day, due to the restraining order against Mr. Crane, the parties had to live separately until the order was lifted. Dkt. 47, at 4.

Mr. Crane states that he was contacted by Officer Rod Celello of the Anaheim, California Police Department. *Id.*, at 5. Mr. Crane states that he told Officer Cellello of the Pierce County Sheriff Deputies' opinion that there was no evidence of abuse. *Id.* On July 25, 2005, Mr. Crane was informed by a prosecutor in California that there was insufficient evidence to bring a case against him and the case was closed. *Id.*

Plaintiffs were contacted by CPS on July 18, 2005. Dkt. 47, at 5. On August 12, 2005, CPS issued a letter regarding its investigation of the incident. Dkt. 36, at 35. It found that the allegation of physical abuse was inconclusive. *Id.* Inconclusive was defined in the letter to mean "based on the information available to CPS, it cannot be determined whether child abuse or neglect occurred." *Id.* Plaintiffs state that they were not satisfied with that result, and, at Plaintiffs' request, worked with CPS for a year, CPS issued a further decision. Dkt. 47, at 5. On July 20, 2006, CPS issued an additional report regarding the incident. Dkt. 46, at 121-122. CPS found that the allegation of physical abuse was unfounded. *Id.*

Plaintiffs state that as a result of this incident, they decided to move from Roy to Graham, Washington. Dkt. 47, at 6.

**B.    PENDING MOTIONS**

Defendant Rowe moves for summary dismissal of the claims against him, arguing that: 1) Plaintiffs' constitutional rights to family unity and intimate association were not violated, 2) even if their constitutional rights were violated, none of his actions caused a violation, 3) due to the fact that none of Plaintiffs constitutional rights were violated, their claims for malicious prosecution, abuse of process and conspiracy to deprive constitutional rights claims should be dismissed, and ) he is protected by qualified immunity as to Plaintiffs' federal claims.  Dkt. 34.  Defendant Rowe argues that Plaintiffs state law claims should be dismissed because:  1) RCW 26.44.060 does not create a civil cause of action or remedy for false reporting, 2) he has immunity under RCW 26.44.060, 3) he has qualified immunity under Washington state law, 4) he is entitled to immunity under RCW 4.24.510, and 5) Plaintiffs cannot show that Defendant Rowe's actions were the proximate cause of their alleged injuries.  *Id.*

Defendant Holdam moves for summary dismissal of Plaintiff's claims arguing that: 1) Defendants did not violate Plaintiffs' constitutional rights regarding their family relationships, 2) Defendants did not abuse the process contrary to Plaintiffs' constitutional rights, 3) Defendants did not maliciously prosecute Plaintiffs, 4) there is no evidence that Defendants conspired to violated Plaintiffs' civil rights, 5) Defendants are entitled to qualified immunity on the federal claims, 6) there is no cause of action under RCW 26.44.060 under the facts here, 7) Defendant Holdam is entitled to state law qualified immunity, and 8) Plaintiffs cannot show proximate cause for their injuries.  Dkt. 37.

Plaintiffs respond arguing that:  1) Defendants Holdam and Rowe are not entitled to qualified immunity, 2) there are issues of fact as to whether Plaintiffs' constitutional right to family unity was violated, 3) Plaintiffs' rights were clearly established, 4) the fact that Jeff Crane and Jennifer Crane were unmarried at the time does not make Defendants' conduct constitutional, 5) Defendants Holdam and Rowe are not entitled to summary judgment for the 42 U.S.C. § 1983 malicious prosecution claim, and 6) Defendants Holdam and Rowe are not entitled to summary judgment for the civil conspiracy claim.  Dkt. 45.  Plaintiffs further respond that Defendants Holdam and Rowe are liable under state law: 1) for their negligence,  malicious interference with family, and state law malicious prosecution claims, 2) there is an

implied cause of action in RCW 26.44.060, 3) Plaintiffs are entitled to a cause of action or presumption because of Defendants' spoliation of the photographic evidence, and 4) Defendants Holdam and Rowe caused Plaintiffs' damages. *Id.*

Although the pending motions were brought by the individually named Defendants and raised no issues regarding the claims against the City of Roy, it filed a reply in opposition to Plaintiffs' response. Dkt. 55. The City argues that: 1) the Court should not grant discovery spoliation sanctions against the City, 2) Plaintiffs offer no evidence to substantiate their claim that City of Roy police reports were used to obtain the June 29, 2005 protective order, 3) Plaintiffs offer no admissible evidence regarding Terry Brown's alleged background check on Jeff Crane in 2003, 4) Plaintiffs improperly attempt to use the Washington State Patrol report as evidence of negligence, 5) Plaintiffs cannot use Defendant Holdam's unsworn out of court statement against the City of Roy, and 6) Plaintiffs fail to recognize the distinctions between the instant suit and *Rodriguez v. Perez,* 99 Wn. App. 439 (Div. 1. 2000).

Defendant Rowe replies, arguing that: 1) he is protected by qualified immunity as to Plaintiffs' constitutional claim for interference with familial relationship, 2) Plaintiffs have not opposed the motion as to their abuse of process claim, 3) summary judgment is appropriate on Plaintiff's federal malicious prosecution claim, 4) Plaintiffs' claim that the Defendants conspired to deprive them of their civil rights must fail because there is no evidence that the Defendants were motivated by racial or other class-based animus, 5) Plaintiffs' state law claims for negligence, malicious prosecution, and malicious interference with family should be dismissed because they were not pleaded in the complaint, 6) Plaintiffs claim for a violation of RCW 26.44.060 should be dismissed because there is no implied right of action under the statute, 7) the facts do not justify sanctioning Defendant Rowe over the missing photographs, 8) Defendant Rowe is entitled to state law qualified immunity, and 9) Plaintiffs do not respond to Defendant Rowe's argument that he is immune from Plaintiffs' state law claims under RCW 4.24.510. Dkt. 58.

Defendant Holdam replies, arguing that: 1) he is entitled to qualified immunity on Plaintiffs' federal constitutional claims, 2) Plaintiffs' conspiracy claim lacks merit, 3) Plaintiffs' state law claims are subject to summary judgment dismissal, and 4) spoilation is not an issue appropriately addressed on

summary judgment. Dkt. 59.

Defendant Holdam moves to strike paragraphs 2, 3, 8, 9, 11, and 14-17 of Jennifer Crane's Declaration (Dkt. 46) as inadmissible hearsay, including inappropriate opinion evidence, and containing conclusory allegations. Dkt. 59. Defendant Holdam moves to strike portions of the Declaration of Sergeant Lantz (Dkt. 49) as hearsay. *Id.* Defendant Rowe moves to strike portions of Plaintiffs' declarations (Dkts. 46 and 47), and the Declaration of Sergeant Lantz (Dkt. 49) as inadmissible hearsay. Dkt. 58.

## II.    DISCUSSION

### A.    SUMMARY JUDGMENT STANDARD

Summary judgment is proper only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56 (c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."); *See also* Fed. R. Civ. P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 253 (1986); *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254; *T.W. Elec. Serv., Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only

when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elec. Serv., Inc.*, 809 F.2d at 630 (relying on *Anderson, supra*). Conclusory, non specific statements in affidavits are not sufficient, and missing facts will not be presumed. *Lujan v. Nat'l Wildlife Fed'n*, 497 U.S. 871, 888-89 (1990).

### B.    FEDERAL CONSTITUTIONAL CLAIMS

#### 1.    *Claims Made and Defenses*

Plaintiffs assert in their Response that their constitutional rights to family unity/intimate association were violated by Defendants' actions, that Defendants actions constituted malicious prosecution in violation of their constitutional rights, and that the Defendants conspired to violate their federal constitutional rights.  Dkt. 45.  Each of these claims will be examined below, along with application of qualified immunity and other defenses.

#### 2.    *Violation of the Constitutional Right to be Free From an Abuse of the Process by Defendants Rowe and Holdam*

Plaintiffs do not respond to Defendants' arguments that their abuse of process claim should be dismissed.  *Id.*  Western District of Washington Local Fed. R. Civ. P. (b)(2) provides that failure to respond to a motion may be considered by the court as an admission that the motion has merit.  Plaintiffs' failure to respond to Defendants' motion on this claim is so construed.  Defendants' motion on Plaintiffs' claim for abuse of process, brought pursuant to section 1983, should be granted and the claim dismissed.

#### 3.    *Qualified Immunity*

"[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "Through application of the qualified immunity doctrine, public servants avoid the general costs of subjecting officials to the costs of trial - distraction of officials from their governmental duties, inhibition of discretionary action, and deterrence of able people from public service." *V-1 Oil Co. v. Smith*, 114 F.3d 854, 857 (9th Cir. 1997)(*internal citations omitted*).  The immunity is "immunity from suit rather than a

mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

"The Supreme Court has established a two-part analysis for determining whether qualified immunity is appropriate in a suit against an officer for an alleged violation of a constitutional right." *Boyd v. Benton County*, 374 F.3d 773, 778 (9th Cir. 2004), *citing Saucier v. Katz*, 533 U.S. 194, 201 (2001). A court required to rule upon qualified immunity must examine: (1) whether the officer violated the plaintiff's constitutional rights on the facts alleged and (2) if there was a violation, whether the constitution rights were clearly established. *Id.* (*internal citations omitted*).

> a.  Violation of the Constitutional Right to Family Unity by Defendants Rowe and Holdam - First Saucier Inquiry

The Substantive Due Process Clause of the Fourteenth Amendment to the U.S. Constitution protects the fundamental right of parents to make decisions concerning the care, custody, and control of their children. *Troxel v. Grandville,* 530 U.S. 57, 64 (2000). "While a constitutional liberty interest in the maintenance of the familial relationship exists, this right is not absolute." *Woodrum v. Woodward County,* 866 F.2d 1121, 1125 (9th Cir 1989). The interest of the parents must be balanced against the interests of the state in protecting the child. *Id.* The Fourteenth Amendment, then, "guarantees that parents will not be separated from their children without due process of law except in emergencies." *Mabe v. San Bernadino Co. Dept. of Public Social Services,* 237 F.3d 1101, 1107 (9th Cir. 2001).

Further, the First Amendment "protects those relationships, including family relationships, that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life." *Board of Dir. v. Rotary Club,* 481 U.S. 537, 545 (1987)(*internal citations omitted*).

The Ninth Circuit recognizes a cause of action under 42 U.S. § 1983 for alleged violations of the right to family unity and intimate association under both the Fourteenth and First Amendment. *Lee v. City of Los Angeles,* 250 F.3d 668, 685 (9th Cir. 2001).

There are issues of fact as to whether Plaintiff Jennifer Crane's right to family unity with her children was violated. Parties do not dispute that a mother generally has a right to unity with her biological children. Although Plaintiffs admit that an incident involving Mr. Crane grabbing L.B. occurred in

California (Dkts. 46 at 4-5, and 47, at 2-3), there are issues of fact as to whether L.B. had marks on his body as a result of the incident. Viewing the evidence in a light most favorable to Plaintiffs, there is some showing that Defendants Holdam and Rowe included false information in their police reports: that L.B. had marks on his body consistent with being choked when he did not. The fact that Jennifer Crane was separated from her children for a single day, does not change that she was, indeed, separated from them. At the hearing on these Motions, Defendants Holdam and Rowe argued that her right to family unity was not violated because Jennifer Crane was afforded due process and emergency circumstances existed. Due process, at a minium, requires notice and an opportunity to be heard. *Ram v. Rubin*, 118 F.3d 1306, 1310 (9th Cir. 1997). There is no evidence in the record that Jennifer Crane had notice of the allegedly false reports or of the ex parte proceedings or had an opportunity to be heard. There are issues of fact as to whether emergency circumstances existed. The record indicates that the incident complained of occurred several days prior to the ex parte hearing. L.B. had been in the Plaintiffs' custody for days without incident. There was no prior allegation of Mr. or Mrs. Crane ever abusing or neglecting L.B. If Plaintiffs' version of events is believed, Plaintiff Jennifer Crane's right to family unity with her children was violated for a day. However, as discussed in Section B. 4. of this Opinion, Plaintiffs' have not shown that Defendants Holdam and Rowe's actions caused the deprivation as to her children.

As to Plaintiff Jeffrey Crane's claim to family unity with L.B. and H.B., Plaintiffs fail to cite to any authority that a live-in boyfriend, even if engaged to his girlfriend, has a right to family unity with his girlfriend's children. No doubt, families are, and always have been, composed of various mixes of people of many ages. In this case though, at the time of the children's approximately 20 day separation from Plaintiff Jeffery Crane, Mr. Crane was not related to these children biologically or by marriage, nor had he legally adopted them. Plaintiffs do not contest that there was some sort of incident in California involving L.B., who was around six. Dkts. 46 at 4-5, and 47, at 2-3. The right to family unity must always be balanced with the state's concern for the safety of children. *Woodrum*, at 1125. In any event, Plaintiffs have failed to show any authority for extending the constitutional protection to the right of family unity to Plaintiff Jeffrey Crane and L.B. and H.B.. Plaintiffs have not shown that there are issues of fact as to

whether Plaintiff Jeffrey Crane's First and Fourteenth Amendment right to family unity with the children was violated.

Plaintiffs point out that not only the right to family unity with the children was impacted by these events. Plaintiffs argue that Jennifer and Jeffrey Crane's right to intimate association with each other was restricted during the twenty or so days that the protective order was in place. Plaintiffs note that when Jennifer Crane had custody of the children, she and Mr. Crane were unable to be together because L.B. and Jeffrey Crane were to have no contact. The issue then, is whether an unmarried couple has a First Amendment right to intimate association. The Cranes lived together for approximately a year prior to these events. Although they were engaged, the record fails to indicate when they were actually married. No doubt, many couples never marry but remain in long lasting relationships sharing "a special community of thoughts, experiences, and beliefs" as well as "distinctively personal aspects of one's life." *Board of Dir. v. Rotary Club,* 481 U.S. 537, 545 (1987). However, other couples live together for a short time and then separate. The Court is faced with a difficult question: that is when does the constitutional right to intimate association attach? Plaintiffs do not point to any authority that in 2005 co-habitating unmarried couples had a constitutional right to intimate association. In any event, as discussed in Section B. 4. here, even presuming that such a right did exist here, the Plaintiffs still have not shown that the Defendants' actions violated that right. Additionally, even if Plaintiffs had a right to intimate association, and could show that Defendants' actions violated that right, Plaintiffs have not shown the Plaintiffs' right to intimate association was clearly established at the time.

> b.    <u>Violation of the Constitutional Right to Avoid Being Maliciously Prosecuted by Defendants Rowe and Holdam - First *Saucier* Inquiry</u>

In order to prevail on a § 1983 claim of malicious prosecution, a plaintiff must show that the defendants prosecuted him with malice and without probable cause, and that they did so for the purpose of denying him equal protection or another specific constitutional right. *Awabdy v. City of Adelanto*, 368 F.3d 1062, 1066 (9th Cir. 2004). Generally, a claim of malicious prosecution is not cognizable under Section 1983 if a process is available within the state judicial system to provide a remedy. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir. 1985). The only exception is "when a malicious prosecution is

conducted with the intent to deprive a person of equal protection of the laws or is otherwise intended to subject a person to denial of constitutional rights." *Id.*

Here, Plaintiffs have failed to show that Defendants Rowe and Holdam's actions resulted in a malicious prosecution or other denial of their constitutional rights. Furthermore, Plaintiffs' section 1983 malicious prosecution claim is barred by the fact that there is a state remedy available. This claim should be dismissed because Plaintiffs have not shown that any of their constitutional rights were violated by these Defendants. *See Clark v. Baines,* 150 Wn.2d 905, 912 (2004)(recognizing a Washington common law claim for malicious prosecution). The Amended Complaint (amended after these motions were filed) includes a state law claim for malicious prosecution. Dkt. 69, at 10.

Moreover, Defendants point out that no criminal charges were filed against Plaintiffs, and so no claim for malicious prosecution can lie under section 1983. Dkts. 34 and 37. Plaintiffs have cited no authority that allows a malicious prosecution action under section 1983 in a case like this one, where the existence of police reports, but not their content, was mentioned by a third party attempting to persuade a court to take an action in a civil matter. Plaintiffs cite to no binding authority which holds that the institution of state civil administrative proceedings, here via CPS, is enough to constitute "prosecution." In any event, Defendants here did not institute the proceedings. The evidence in the record indicates that Mr. Brown made the CPS referral before Defendants drafted their reports. Dkt. 46, at 63. There is no evidence that either Defendants Rowe or Holdam sent the police reports to CPS. At best, Defendants' reports contributed to the continuation of the CPS investigation. Plaintiffs have not shown that taking an action that, at best, continues a state civil administrative proceeding is sufficient to support a claim for malicious prosecution under Section 1983. Defendants motion to summarily dismiss Plaintiffs' malicious prosecution claim, brought under section 1983, should be granted.

          c.    <u>Conspiracy to Violate Plaintiffs' Constitutional Rights by Defendants Rowe and Holdam - First *Saucier* Inquiry</u>

It is unclear upon what the Plaintiffs' constitutional conspiracy claim is based. Under 42 U.S.C. 1985(3) - the Ku Klux Klan Act of 1871- individuals are protected from conspiracies to deprive them of their legally protected rights. *Sever v. Alaska Pulp Corp.*, 978 F.2d 1529, 1536 (9th Cir. 1992). To bring

a claim successfully under section 1985(3), a plaintiff must allege and prove four elements:

> (1) conspiracy, (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws, and (3) an act in furtherance of the conspiracy; (4) whereby a person is either injured in his person or property or deprived of any right or privilege of a citizen of the United States.

*Id.* (*internal citations omitted*). "Further, the second of these four elements requires that in addition to identifying a legally protected right, a plaintiff must demonstrate a deprivation of that right motivated by some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action." *Id.*

Plaintiffs point to no evidence in the record that Defendants were motivated by racial or other class-based "invidiously discriminatory animus." To the extent that Plaintiffs bring a conspiracy claim under 42 U.S.C. § 1985(3), it should be dismissed.

Also, however, "[i]t is permissible to state a civil cause of action of conspiracy, based on § 1983." *Cohn v. Norris,* 300 F.2d 24 (9th Cir. 1962). A civil conspiracy is 1) a combination of two or more persons, 2) who, by some concerted action, intend to accomplish some unlawful objective, 3) for the purpose of harming another, 4) which results in damage. *Vieux v. East Bay Ridge Park Dist.,* 906 F.2d 1330, 1343 (9th Cir. 1990)(*internal citations omitted*). "In order to prove a civil conspiracy, the parties, to have conspired, must have reached a unity of purpose or a common design and understanding, or a meeting of the minds in an unlawful arrangement." *Id.* Plaintiffs cite *Harris v. Roderick*, 126 F.3d 1189 (9th Cir. 1997), which was a *Bivens* action arising from the Ruby Ridge shooting in Idaho. Plaintiff there made a claim that federal officials had conspired to deny him his constitutional rights. *Id.* The Ninth Circuit affirmed the denial of the law enforcement officers' motion on qualified immunity. *Id.*

To the extent their claim is brought pursuant to section 1983, the Defendants' motion to summarily dismiss Plaintiffs' claim for a civil conspiracy to violate their constitutional rights should be granted. Plaintiffs have failed to point to any evidence in the record which shows that Defendants engaged in a concerted action intended to deny them their constitutional rights. Plaintiffs do not dispute that an incident occurred between Plaintiff Jeffrey Crane and L.B. Dkts. 46 at 4-5, and 47, at 2-3. Plaintiffs do not dispute

that Defendants are subject to Washington's mandatory child abuse reporting statute, RCW 26.44.010, *et seq*. If Plaintiffs' version of events is believed, the police reports included some false information. Plaintiffs urge that an improper motive for including this false information can be imputed from the fact that at least one of the Defendants, Holdam, has a personal social relationship with Mr. Brown. The mere existence of a social relationship with Mr. Brown in insufficient evidence that the Defendants worked together with the intent to harm Plaintiffs. In any event, Plaintiffs have failed to show that their constitutional rights were violated by the acts of the individual Defendants here. (See Section B. 4. Causation, below) A conspiracy allegation, even if established, does not give rise to liability under section 1983 unless there is an actual deprivation of civil rights. *Woodrum v. Woodward County, Okl.,* 866 F.2d 1121, 1126 (9th Cir. 1989)(*citations omitted*).

d.     <u>Second *Saucier* Inquiry as to All Claims</u>

In analyzing the second part of the *Saucier* test, the issue is "whether the plaintiff's constitutional right was clearly established at the time of the injury." *Boyd* at 780. "For a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id.* at 780-781. "In other words, an official who makes a reasonable mistake as to what the law requires under a given set of circumstances is entitled to the immunity defense." *Id.*

i.     *Family Unity*

Defendants Holdam and Rowe are not entitled to qualified immunity as to Plaintiff Jennifer Crane's claim for a violation of her right to family unity. Ms. Crane's constitutional right to family unity with her biological children was clearly established at the time. If Plaintiffs' version of events is believed, a reasonable official would understand that deciding to issue police reports based not upon the facts of the case, but based on a personal relationship, and including false information of child abuse in them, would violate Plaintiff Jennifer Crane's right to family unity. Furthermore, Defendants Holdam and Rowe were on notice that it is a crime in the state of Washington to make a false report of child abuse. RCW 26.44.060 (4). The Court is sensitive to the potential chilling effect this type of ruling could have, and so

emphasizes that the ruling is limited to the unique facts here. Mr. Brown had been a member of this extremely small police force just months prior to this incident. At this time, Defendants are not entitled to qualified immunity on Plaintiff Jennifer Crane's claim that her rights to family unity were violated.

Even if Plaintiff Jeffrey Crane's right to family unity with L.B. and H.B. were violated, Defendants are entitled to qualified immunity on that claim. A live-in boyfriend's constitutional right to family unity with his girlfriend's children was not clearly established at the time the parties were separated. Plaintiff Jeffrey Crane's claim for violation of the right to family unity should be dismissed.

Plaintiffs' claim for the right to intimate association suffers from the same defect. Plaintiffs fail to point to any authority that a couple who has lived together for under a year has a constitutionally protected right to intimate association, particularly when balanced with the state's interest in protecting children. Accordingly, no showing has been made that reasonable officers in Defendants' position would realize issuing a child abuse report which included false allegations would violate the child's biological mother's right to intimate association with her boyfriend, the alleged assailant. Defendants are entitled to qualified immunity as to this claim.

### ii. *Malicious Prosecution and Conspiracy*

Taken in a light most favorable to Plaintiffs, the facts alleged do not show the Defendants' actions caused a violation of Plaintiffs' constitutional right to avoid being maliciously prosecuted. Even if they had shown that Defendants' actions violated such a right, the right was not clearly established at the time. Defendants are entitled to qualified immunity on this claim.

Plaintiffs have failed to show that there are issues of fact as to whether Defendants conspired to deprive them of their civil rights. Accordingly, no further inquiry under *Saucier,* as to the conspiracy claim is required. *Bingue v. Prunchak*, 512 F.3d 1169, 1173 (9th Cir. 2008).

### e. Conclusion as to Qualified Immunity on All Claims

Defendants Holdam and Rowe are entitled to qualified immunity on Jeffrey Crane's claim of right to family unity with L.B. and H.B because he failed to show he had such a right, and his rights were not clearly established at the time. Defendants are entitled to qualified immunity on the Plaintiffs' claim for a

violation of their First Amendment right to intimate association, as they were not clearly established. Defendants are likewise entitled to qualified immunity on the malicious prosecution and conspiracy claims. They are not entitled to qualified immunity as to Plaintiff Jennifer Crane's claim that her right to family unity was violated. Defendants argue that even if they are not entitled to qualified immunity, Plaintiffs can not show that Defendants' actions caused a constitutional violation.

        4.    *Causation*

"In a section 1983 action, the plaintiff must demonstrate that the defendant's conduct was the actionable cause of the claimed injury. To meet this causation requirement, the plaintiff must establish both causation-in-fact and proximate causation." *Tahoe-Sierra Preservation Council, Inc. v. Tahoe Regional Planning Agency,* 216 F.3d 764, 783 (9th Cir. 2000) (*citing Arnold v. IBM Corp.*, 637 F.2d 1350, 1355 (9th Cir.1981)).

Plaintiffs have failed to show that Defendants Rowe and Holdam's actions were either the "cause-in-fact" or the "proximate cause" of Jennifer Crane's separation from her children for a day. Plaintiffs admit that an incident involving Mr. Crane grabbing L.B. around his shoulder/neck area occurred in California. Dkts. 46 at 4-5, and 47, at 2-3. Because the facts of the party opposing qualified immunity to determine whether a constitutional violation could be found are accepted, *Redding v. Stafford Unified School Dist. No. 1,* 531 F.3d 1071, 1084, n. 11 (9th Cir. 2008), the Court assumes that Defendants Rowe and Holdam included false information in the police reports. That is, that L.B. had no bruising or marks on his neck and throat, contrary to what was in the reports. Even assuming that Defendants Rowe and Holdam included false information in the police reports, there is no evidence in the record that these reports were given to the Pierce County Superior Court when the ex parte restraining order was issued. The record shows that Mr. Brown mentioned to the Superior Court that the police reports existed and the fact that the reports were being forwarded to the appropriate authorities in California. Dkt. 46, at 71-72. The record does not show that Mr. Brown mentioned the <u>content</u> of the reports. *Id.* There is no evidence in the record that the Pierce County Superior Court had any idea what was in the reports. There is no evidence in the record that the mere existence of these police reports, or that they were being forwarded to

authorities in California, caused the Superior Court to enter its order which resulted in the separation of Plaintiff Jennifer Crane and her children for a day. Plaintiffs' argument that they are entitled to an inference that the reports lent legitimacy to Mr. Brown's allegations and so were the "cause in fact" and "proximate cause" of Jennifer Crane's separation from her children stretches causation to the breaking point. Even if Plaintiffs' version of events is believed, Plaintiffs have not shown that there are issues of fact as to whether Plaintiff Jennifer Crane's right to family unity with her children was violated by Defendants Rowe and Holdam's conduct.

Moreover, Plaintiffs have not shown that Defendants Rowe and Holdam's actions were either the "cause-in-fact" or the "proximate cause" of the Crane's intermittent separation from each other during the twenty or so days until the hearing. Plaintiffs have not shown "but for" the police reports the no contact order would not have been issued or would have been vacated earlier. Moreover, it is important to note that the Superior Court did not issue an order prohibiting Mr. and Mrs. Crane from having contact with one another. Plaintiffs argue that the practical result of the no contact order was that the Cranes were separated because when Ms. Crane had her son, Mr. Crane could not be around L.B. and, therefore, Mrs. Crane. Even if it could be said that the original ex parte no contact order resulted in Ms. Crane having to choose to be separated from Mr. Crane, the chain of causation is simply stretched too thin. Plaintiffs have failed to show that Defendants Rowe and Holdam's actions violated Plaintiffs' constitutional right to intimate association.

Plaintiffs argue that the Court orders separating Mrs. Crane from L.B. for a day, and the intermittent separation of the Plaintiffs, was not the only result of the filing of the reports. Plaintiffs argue that as a result of the issuance of the police reports, a CPS investigation began. Plaintiffs have failed to point to any constitutional right that was violated as a result of the CPS investigation. Plaintiffs' argument that the CPS investigation amounted to malicious prosecution under section 1983 should be dismissed as barred by the availability of a state remedy as stated in Section B. 3. b. of this opinion..

5. *Conclusion on Plaintiffs' Federal Claims*

Defendants motion to summarily dismiss Plaintiffs' federal claims should be granted. Plaintiffs

failed to oppose Defendants' motion to dismiss the abuse of process claim. Plaintiffs have not shown that there are material issues in dispute as to whether Defendants' conduct violated their constitutional rights to family unity and intimate association. Plaintiffs' section 1983 claims of malicious prosecution and conspiracy to deprive them of their constitutional rights should be dismissed because Plaintiffs failed to show that their constitutional rights were violated by the individual Defendants' acts. Plaintiffs' federal claims against Defendants Rowe and Holdam should be dismissed.

### C.    STATE CLAIMS

#### 1.    *Violation of RCW 26.44.060*

Under Washington State's mandatory child abuse reporting statute, RCW 26.44.030(1)(a), when any law enforcement officer "has reasonable cause to believe that a child has suffered abuse or neglect, he or she shall report such incident, or cause a report to be made, to the proper law enforcement agency" or to CPS.    RCW 26.44.060 provides,

> (1)(a) Except as provided in (b) of this subsection, any person participating in good faith in the making of a report pursuant to this chapter or testifying as to alleged child abuse or neglect in a judicial proceeding shall in so doing be immune from any liability arising out of such reporting or testifying under any law of this state or its political subdivisions. . . .
> (5) A person who, in good faith and without gross negligence, cooperates in an investigation arising as a result of a report made pursuant to this chapter, shall not be subject to civil liability arising out of his or her cooperation.

Plaintiffs acknowledge that there is no explicit private right of action under RCW 26.44.060, but argue that a civil right of action should be implied if the statute is violated by the inclusion of false information in a report. Dkt. 45. To determine whether a statute creates an implied cause of action, Washington courts use a three-part test: "(1) whether the plaintiff is within the class for whose especial benefit the statute was enacted, (2) whether legislative intent, explicitly or implicitly, supports creating or denying a remedy, and (3) whether implying a remedy is consistent with the underlying purpose of the legislation." *Sheikh v. Choe,* 156 Wash.2d 441, 457 (2006).

Here, there is no showing that legislative intent supports implying the cause of action urged here. The structure of the statute supports this contention. The legislature clearly contemplated and included a criminal sanction for a person who "intentionally' and in "bad faith" makes a false report of alleged abuse.

RCW 26.44.060 (4).  Conversely, the legislature provided civil immunity for a party who in "good faith" makes a report of alleged child abuse, or "who in good faith and without gross negligence, cooperates in an investigation arising as a result of a report."  RCW 26.44.060(1)(a) and (5).  The legislature went so far as to deny civil liability protection to a party who was convicted criminally under RCW 26.44.060(4), thus providing a remedy for victims in that circumstance, but made no such exclusion in other contexts.  RCW 26.44.060(1)(b).  There is no support for the notion that there is legislative support for implying a civil cause of action out of this statute.  Nor is there a showing that implying a remedy here is consistent with the underlying purpose of this section of the legislation.

Defendants motion for summary dismissal of Plaintiffs' claim under RCW 26.44.060 should be granted.  A private right of action should not be implied under the statute.  Plaintiffs offer no authority to support their argument that the Court should imply a cause of action under this statute because the Defendants allegedly spoiled evidence by losing or failing to produce the pictures of L.B.[1]  Any claim based on making and filing of an intentionally false report would be simply a common law tort action, where the statute sets the standard of ordinary care under a negligence per se theory.  In any event, Plaintiffs' claim under RCW 26.44.060 should be dismissed.

2.    *Negligence*, *Malicious Interference with Family, Malicious Prosecution*

Plaintiffs argue in their response that their negligence, malicious interference with family and malicious prosecution claims against Defendants Rowe and Holdam should not be dismissed.  Dkt. 45.  Defendants point out in their Replies that no such claims were made against them in the Complaint, and their original motions did not address these claims.  Defendants are correct.  These claims are the subject of a motion to amend the Complaint.  Defendants' motions should not be denied on this basis.

D.    **CONCLUSION ON MOTIONS FOR SUMMARY JUDGMENT**

Defendants' motions for summary dismissal of the claims asserted against them in the current

---

[1]The Court notes that later pleadings also refer to an audio tape of an interview with L.B. that has allegedly been lost or destroyed, but the audio tape was not the subject of this motion.  *See* Dkt. 53, at 14.

Complaint should be granted.

This case appears to be fallout from a divorce case - a divorce case gone wild. The only federal nexus shown is that peripheral players - Defendants Holdam and Rowe - were, arguably, acting under the color of law for section 1983 purposes during their involvement with the Brown dissolution disputes, but the section 1983 claims are not supported by the evidence.

The remaining federal claims are those made against the City of Roy, who is not a movant here.

Pursuant to 28 U.S.C. § 1367(c), district courts may decline to exercise supplemental jurisdiction over state law claims in certain circumstances. *See Acri v. Varian Associates, Inc.*, 114 F.3d 999, 1001 (9th Cir. 1997)(while discretion to decline to exercise supplemental jurisdiction over state law claims is triggered by the presence of one of the conditions in § 1367(c), it is informed by the values of economy, convenience, fairness, and comity). Parties should be aware, that if all federal claims are dismissed, this Court will consider the question of whether to retain supplemental jurisdiction over any state law claims.

### E.    MOTION TO STRIKE

Defendant Holdam moves to strike paragraphs 2, 3, 8, 9, 11, and 14-17 of Jennifer Crane's Declaration (Dkt. 46) as "inadmissible hearsay, opinion and conclusory allegations." Dkt. 59. Defendant Holdam moves to strike portions of the Declaration of Sergeant Lantz (Dkt. 49) as hearsay. *Id.* Defendant Rowe also moves to strike portions of Plaintiffs' declarations (Dkts. 46 and 47), and the Declaration of Sergeant Lantz (Dkt. 49). Dkt. 58.

Defendants' motions to strike (Dkt. 58 and 59) should be granted, in part and denied, in part. The Court is aware that discovery in this case is in the early stages, as so takes an expansive view of what constitutes hearsay. Parties are cautioned that this ruling is for the purposes of this motion alone, and does not necessarily apply to later motions and proceedings.

Portions of paragraphs 2, 3, 8, 9, 11, and 14 of Jennifer Crane's Declaration (Dkt. 46) that contain hearsay should be stricken. This includes references to Terry Brown's first marriage (paragraph 2), statements allegedly made by the now deceased City of Roy Chief of Police (paragraph 3), allegations as to what Defendants Rowe and Holdam did or did not observe on L.B. (paragraph 8), statements about the

personal relationships among people on the City of Roy police force and fire department (paragraph 9), in court statements attributed to Plaintiffs' lawyer and Terry Brown (paragraph 11), and statements attributed to Quintin Page, the CPS case worker (paragraph 14). The motion is denied as to other statements in those paragraphs and as to paragraphs 15-17 of Jennifer Crane's Declaration. Defendant Rowe's motion to strike portions of Plaintiff Jeffrey Crane's Declaration (Dkt. 47) should be granted as it contains inadmissable hearsay. The portions of these declaration containing hearsay were not considered.

Defendants motion to strike portions of the Declaration of Sergeant Bruce Lantz (Dkt. 49) should be granted. Paragraph 6, the first two sentences of paragraph 7, paragraph 8, the second sentence of paragraph 9, and paragraph 10 are inadmissible hearsay and should be stricken. Exhibits A and B contain hearsay and were not considered for the truth of the matters asserted therein. Exhibits E and F to the Lantz Declaration were the transcripts of Rowe and Holdam's interview with Sergeant Lantz, and for the purposes of this motion only, should be considered as party opponent admissions pursuant to Fed. R. of Evidence 801 (d)(2).

### III.  ORDER

Therefore, it is hereby, **ORDERED** that:

- Defendant Rowe's Motion for Summary Judgment re: Immunity (Dkt. 34) is **GRANTED**; Plaintiffs' federal claims against Defendant Rowe for violations of their constitutional rights to family unity and intimate association **ARE DISMISSED**; Plaintiffs federal claims against Defendant Rowe for abuse of process, malicious prosecution, and conspiracy to violate their constitutional rights **ARE DISMISSED**; Plaintiffs' claim against Defendant Rowe under RCW 26.44.060 **IS DISMISSED**;

- Defendant Holdam's Motion for Summary Judgment (Dkt. 37) is **GRANTED**; Plaintiffs' federal claims against Defendant Holdam for violations of their constitutional rights to family unity and intimate association **ARE DISMISSED**; Plaintiffs federal claims against Defendant Holdam for abuse of process, malicious prosecution, and conspiracy to violate their constitutional rights **ARE DISMISSED**; Plaintiffs' claim against Defendant Holdam under RCW 26.44.060 **IS DISMISSED**;

- Defendant Holdam and Rowe's motions to strike (Dkt. 58 and 59) are **GRANTED, IN PART, and DENIED, IN PART** as stated above; and

- The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any party appearing *pro se* at said party's last known address.

DATED this 22nd day of September, 2008.

ROBERT J. BRYAN
United States District Judge